## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **(1) USA Regrowth, LLC, (2) Sarang, LLC, (3) Capital Concepts Northwest, LLC, (4) Myrtle Hill, LLC, (5) GHF Investments, LLC and (6) JLO Investments, LLC,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**(1) Midas Investments, LLC and (2) Chad Black, an Individual,**<br><br>**Defendant.** | **Case No. 5:19-cv-00024-HE** |

### PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO MODIFY

Comes now, Plaintiffs, USA Regrowth, LLC, Sarang, LLC, Capital Concepts Northwest, LLC, Myrtle Hill, LLC, GHF Investments, LLC, and JLO Investments, LLC ("Plaintiffs"), and files their Response to Defendants' Motion to Modify Subpoena and for Protective Order. Doc No. 30.   In response to Defendants' arguments, Plaintiffs state as follows:

### FACTS RELEVANT TO DISCOVERY DISPUTE

**History of written discovery**

1.      On May 23, 2019, Defendant Black responded to written discovery from Plaintiffs.  Some of Defendant Black's responses stated, "Plaintiffs have issued a Subpoena Duces Tecum to Melissa Steely seeking many of the same documents which Plaintiffs

1

request Black to identify here." Ex. 1 Defendant Black's Responses to Interrogatories, No. 4 (only relevant portions submitted as exhibit.)

2.      On May 23, 2019, Midas responded to written discovery from Plaintiffs. Several of Midas' responses stated, "…Plaintiffs have issued a Subpoena Duces Tecum to Melissa Steely seeking many of the same documents which Plaintiffs request Midas to identify here." Ex. 2 Defendant Midas' Responses to Interrogatories, No. 4 (only relevant portions submitted as exhibit.)

3.      In response to Plaintiffs' request for banking transaction information, as well as cash and wire transactions at issue, Midas responded, "the answer [ ] may be derived or ascertained from business records of Midas which it previously produced with its Rule 26 disclosures.  In addition, Plaintiffs have issued a Subpoena Duces Tecum to Melissa Steely seeking many of the same documents which Plaintiffs request Black to identify here." Ex. 1, Defendant Black's Responses to Interrogatories, No. 6 (only relevant portions submitted as exhibit.)

4.      In response to Plaintiffs' request for banking transaction information, as well as cash and wire transactions related to the properties at issue, Midas responded, "the answer [ ] may be derived or ascertained from business records of Midas which it previously produced with its Rule 26 disclosures.  In addition, Plaintiffs have issued a Subpoena Duces Tecum to Melissa Steely seeking many of the same documents which Plaintiffs request Black to identify here." Ex. 2, Defendant Midas' Responses to Interrogatories, No. 7 (only relevant portions submitted as exhibit.)

2

5.      Additionally, Plaintiffs requested Midas produce financial documents from 2016, 2017, and 2018, including QuickBooks, balance sheets, profit and loss statements, income statements, operating statements, bank statement and bank reconciliations, accounts receivable, accounts payable, and annual budgets.  Midas objected, claiming the information was part of a fishing expedition and included confidential and proprietary information, violating Midas' right to financial privacy.   Ex. 2, Defendant Midas' Responses to Requests for Production, No. 5 (only relevant portions submitted as exhibit.)

6.      While Defendants claimed they produced documents pursuant to Rule 26, they had not produced a single document with their Rule 26 disclosures letter dated March 26, 2019.  Ex. 3, Defendants' Rule 26 Disclosure letter.

7.      On July 1, 2019, Plaintiffs sent a detailed letter to Defendants seeking sufficient responses and production of responsive documents. Ex. 4, Letter dated July 1, 2019.

8.      Thereafter, on July 12, 2019, Defendants then produced 1122 pages. (Note several of the emails produced by Defendants were forwarded to counsel on February 15, 2019, but not produced for 5 months, after a second request by Plaintiffs.) See Ex. 5, email.

9.      The 1122 pages of documents produced by Defendants did not contain the banking or financial information sought in Interrogatory Nos. 4, 6 and 7, or Request for Production No. 5.   Plaintiffs still do not have sufficient responsive documents.

3

**History of Plaintiffs' Subpoena Duces Tecum to Chase**

10.     On July 19, 2019, Plaintiffs issued a Subpoena Duces Tecum to Chase bank seeking banking information for Midas and Black. Ex. 6, Subpoena to Chase.

11.     On July 30, 2019, Defendants sent a letter to Plaintiffs objecting to the subpoena. See Ex. 7, Letter dated July 30, 2019.

12.     Thereafter, counsel for the parties discussed their positions in good faith but were not able to reach a resolution so Defendants filed the Motion to Modify at issue.

13.     On August 20, 2019, Defendants notified Plaintiffs by letter that there were "only two" Chase accounts (8510 and 8161) related to the properties at issue and they would soon produce related documents. Ex. 8, Letter dated August 20, 2019.

14.     On August 23, 2019, Defendants clarified they would be produced detailed account statements for account 8510 from 2016-2017 and statements for account 8161 from 2016-2018.  Ex. 9, Email from E. Allan.

15.     On August 28, 2019, after a Protective Order was entered, Defendants produced 240 pages of Chase bank statements.  These statements were for accounts ending in 8161 and 8510.  A review of the statements shows fund transferred to and from over 20 separate Chase accounts.  See e.g., Ex. 10, Defendants' production.

16.     These additional bank statements, which according to Defendants are directly related to the Properties at issue, raise further concerns as to Defendants' misuse of the funds provided by Plaintiffs. For example, during the month of March 2017, Plaintiffs wired a total of $87,064.00 to Midas Investments, LLC's account ending in 8510.

4

During that same period, Defendants spent $10,107.22 in debit card charges out of account 8510, almost none of which seem to be related to the Properties. Defendants' March 2017 charges from account 8510 include: purchases at nail salons, a med spa, iTunes, tanning salons, a dentist's office, a pediatrician's office, a dermatologist's office, grocery stores, clothing stores, Toys R Us, Scholastic book club, dozens of restaurants, and a $306.99 cash withdrawal from an ATM on the Las Vegas Strip.  Ex. 11, March 2017 Statement for Account 8510.

**History of Plaintiffs' Subpoena Duces Tecum to Melissa Murphy Steely**

17.    On May 1, 2019, Plaintiffs issued a subpoena to Melissa Murphy Steely ("Steely").  Defendants took issue with the original language of the Subpoena Duces Tecum and the parties worked to resolve the issue, agreeing on the language used in the June 3, 2019 subpoena.

18.    The subpoena to Steely requested various financial and banking documents "regarding the Properties from December 1, 2016 to present."  "Properties" was defined narrowly as the five (5) properties at issue in this case.

19.    In response, Steely produced 61 pages of documents, a majority of which were Chase bank statements for a company titled Midwest Wholesale Properties, LLC, an entity unknown to Plaintiffs.

20.    The Chase statements produced by Steely were for an account ending in 6290.  A review of the statements shows transfers to and from nine (9) different Chase accounts, including the account to which Plaintiffs wired their investment finds to

Defendants, 8161, and 8510, the account which Defendants admit was maintained by Midas Investments, LLC.  Ex. 12, Steely documents.

21.     Suspecting this was not all the responsive documents in Steely's possession, Plaintiffs followed up with Steely and received 51 additional pages of documents, as well as an email from Steely.   Ex. 13, Email from Steely.

22.     A majority of the second set of production from Steely were additional Chase statements.  Steely produced statements for Elwood and Durbin Park Living Trust, Chad Black Trustee, which show transfers to and from several accounts, including the account to which Plaintiffs wired their investment funds to Defendants, the account ending in 8161. See Ex. 14, Steely documents.

23.     Steely produced statements for Midas Investments, LLC (the account into which Plaintiffs wired their investment funds), for April 2017 to July 2017, which show transfers to and from 12 separate accounts. See Ex. 15, Steely documents.

24.     Of significance, Steely's email to counsel states, "[t]**here are many companies that money moved between all related to Midas Investments**"   Ex. 13, Email from Steely.

25.     In addition, Steely stated, "my access to his quickbooks, hubdoc, google drive, etc. have all been removed by Chad and his current staff." Ex. 13, Email from Steely.

## RESPONSIVE ARGUMENT

### The documents sought from Chase are discoverable.

It is well known that:

"[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action… the parties' relative access to the relevant information… the importance of the discovery in resolving the issues… Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

Plaintiffs have brought an action against Defendants claiming breach of contract, unjust enrichment, conversion, and fraud.  See, Doc No. 1.  These allegations are founded on the belief that Defendants misappropriated and misused the funds entrusted to them by Plaintiffs.  It is therefore imperative to allow Plaintiffs to conduct discovery which would support these claims, and determining the use (or misuse) of the investment funds is crucial. To do so, Plaintiffs must have all the related financial and banking information so the funds can be traced.  It just so happens the Defendants have intermingled and moved money between several accounts.  However, this does not make the discovery sought a fishing expedition, but rather a thorough request for all the discoverable documents Plaintiffs will need to evaluate and support their claims.  The documents sought by the Chase subpoena are discoverable.

### The subpoena to Chase is not overbroad.

Defendants argue the Chase subpoena is disproportionate to the claims of the case. However, the financial documents Plaintiffs have obtained illustrate a pattern and practice

of intermixing funds among over 24 different accounts.  Even Midas' CPA recognized and stated the funds were moved around between accounts. See Ex. 13.   The business practices of Defendants warrant the need for Plaintiffs to obtain the requested documents; it is not disproportionate.

Defendants also request the subpoena be limited to "documents dealing with the real estate properties and other matters at issue in this case."  See, Doc No. 20, p. 4.  This was discussed during the good faith conference between counsels.   However, counsel for Defendants could not explain how, if the property limitation was put in place, Chase would be able to determine what documents dealt specifically with the properties.   That is not how the banking information is organized.  This is therefore not a feasible suggestion, and should not be considered by the Court as such.   Again, from the documents Plaintiffs do have in their possession, funds for the properties were transferred to and from over 24 separate accounts.

Defendants also suggest Plaintiffs should be given documents related to just two accounts and then, Defendants would "[offer] further cooperation if Plaintiff's review suggested the involvement of additional accounts."  See, Doc No. 30, p. 5.  However, Plaintiffs review has already proven the "involvement of additional accounts."   This is not a compromise, but just an effort to inappropriately limit Plaintiffs' discovery process, delaying the case.  (It should be noted the parties have already requested one extension of deadlines and in its Order granting the extension, the Court stated "[t]he parties should not anticipate further extensions." See, Doc No. 28.)  It has already been shown that limiting

Plaintiffs to the two accounts suggested by Defendants will not provide Plaintiffs with the information they need; the funds are all intermixed among various accounts. Therefore, the Chase subpoena should not be limited.

## The documents requested in the Chase subpoena cannot be obtained from other sources.

Lastly, Defendants argue the documents requested by Plaintiffs can be obtained through other discovery and the subpoena is unnecessary.  This is in direct opposition to the truth. Plaintiffs requested the information they seek from Chase in written discovery to Defendants.  See Exs. 1 and 2.  Instead of producing the documents, Defendants pointed to Steely, saying Plaintiffs had requested the same documents from her and could obtain them from her.  *Id*.  However, Steely states she doesn't have access to all the responsive documents and has produced only a limited portion of what the Plaintiffs need. See Ex. 13.

Defendants have now offered, as of August 20, 2019, to produce documents related to two accounts.  Ex. 8.  However, as explained previously, these accounts are not the only accounts in which Plaintiffs' investments, intended for the properties at issue, were intermixed.  Further, Defendants only intend on producing documents from 2016-2017 for account 8510 and 2016-2018 for 8161.  Ex. 9.  Since producing the documents on August 28, 2019, Plaintiffs have reviewed the same and determined the statement only further support the fact that Defendants intermingling of funds requires the review of many, many accounts to assess where the investments were spent, and how.  Exs. 10 and 11.

## CONCLUSION

Plaintiffs' Subpoena Duces Tecum to Chase should not be modified or limited. Based on the business practices of Defendants, it has already been established that investment meant to fund the properties at issue were intermingled with at least 24 other Chase accounts.   To investigate, evaluate, and further support their claims against Defendants, Plaintiffs must obtain the records requested from Chase.  Anything less would not provide an accurate history of the use of the money at issue in this case.  Defendants' motion should therefore be denied.

WHEREFORE, Plaintiffs, USA Regrowth, LLC, Sarang, LLC, Capital Concepts Northwest, LLC, Myrtle Hill, LLC, GHF Investments, LLC, and JLO Investments, LLC, pray that upon consideration of the foregoing argument and reasoning, the Court deny Plaintiffs' Motion.

Respectfully submitted,

Daniel V. Carsey, OBA No. 21490
Kelly C. Comarda, OBA No. 22528
Jacqueline M. McCormick, OBA No. 31640
**HALL, ESTILL, HARDWICK, GABLE,
GOLDEN & NELSON, P.C.**
100 North Broadway, Suite 2900
Oklahoma City, OK 73102
(405) 553-2313 (o)
(405) 553-2855 (f)
dcarsey@hallestill.com
kcomarda@hallestill.com
jmccormick@hallestill.com

**ATTORNEYS FOR PLAINTIFFS**
10

**CERTIFICATE OF SERVICE**

I, Jacqueline M. McCormick, hereby certify that on the 29 day of August, 2019, a true and correct copy of the above and foregoing was electronically served using the CM/ECF system to all CM/ECF registrants appearing in the above-styled matter, namely and including:

Terry Stokes
Emily Allan
1503 E. 19th St.
Edmond, OK 73013
tstokes@oklawpartners.com
eallan@oklawpartners.com

Jacqueline M. McCormick